HALLUER, Trustee, et al., Appellees,

v.

EMIGH et al., Appellants.

[Cite as *Halluer v. Emigh* (1992), 81 Ohio App.3d 312.]

Court of Appeals of Ohio,
Summit County.

No. 15299.

Decided April 22, 1992.

*Irving B. Sugerman,* for appellees.

*Robert Thomson* and *L.A. Dirker,* for appellants.

CACIOPPO, Judge.

This action originated when plaintiffs-appellees, Donald Halluer, Trustee, et al., filed suit to settle a dispute regarding the ownership of land in Coventry Township. The trial court adopted the report and recommendation of the referee, who held a hearing on the matter. The trial court found that Coventry was the fee simple owner and, therefore, enjoined defendants-appellants, Thomas Emigh et al., from entering upon the land for any purpose not enjoyed by the general public.

Coventry traced its title back to 1883, through several properly recorded deeds. Thomas Emigh et al. claimed ownership by way of a properly filed Governor's Deed from the state of Ohio. The state claimed ownership through the Canal Act, 23 Ohio Laws 50. Specifically, Section Eight provides:

"That it shall and may be lawful for the said Canal Commissioners, and each of them by themselves, and by any and every Superintendent, Agent and Engineer, employed by them to enter upon, and take possession of, and use all and singular any lands, waters, streams, and materials, necessary for the prosecution of the improvements intended by this act; and to make all such canals, feeders, dykes, locks, dams, and other works and devices as they may think proper for making said improvements; doing nevertheless, no unnecessary damage; and that in case any lands, waters, streams or materials, taken and appropriated for any of the purposes aforesaid, shall not be given or granted to this state, is [*sic*] shall be the duty of the Canal Commissioners, on application being made to them by the owner or owners of any such lands,

waters, streams or materials, to appoint by writing not less than three nor more than five discreet [*sic*] disinterested persons as appraisers, who shall before they enter upon the duties of their appointment, severally take an oath or affirmation, before some person authorized to administer oaths, faithfully and impartially to perform the trust and duties required of them by this act, a certificate of which oath or affirmation, shall be filed with the Secretary of the Canal Commissioners, and it shall be the duty of said appraisers, or a majority of them, to make a just and equitable estimate and appraisal of the loss or damage, if any over and above the benefit and advantage to the respective owners and proprietors, or parties interested in the premises, so required for the purposes aforesaid, and the said appraisers, or a majority of them, shall make regular entries of their determination and appraisal, with an apt and sufficient description of the several premises, appropriated for the purposes aforesaid, in a book, or books, to be provided and kept by the Canal Commissioners, and certify and sign their names to such entries and appraisal, and in like manner certify their determination as to those several premises which will suffer no damages, or will be benefited more than injured by, or in consequence of the works aforesaid, and the Canal Commissioners shall pay the damages so to be assessed and appraised, and the fee simple of the premises so appropriated shall be vested in this state: *Provided however,* That all such applications to the board of Canal Commissioners, for compensation for any lands, waters, streams, or materials so appropriated, shall be made within one year after such lands, waters, streams, or materials, shall have been taken possession of, by the said Commissioners, for the purposes aforesaid." (Emphasis *sic*.) 23 Ohio Laws at 56–57.

According to Emigh, the state obtained fee simple title to the disputed property by appropriating the land for canal purposes.

The referee found that Emigh failed to establish that this particular land was taken by the state pursuant to the Canal Act. Therefore, the referee found that the state had no interest in the property and, consequently, neither did Emigh. The trial court adopted this finding. Emigh appeals, raising four assignments of error. We affirm.

## Assignment of Error No. I

"The trial court erred in its findings that the Township of Coventry is the owner in fee simple of the real property located in said township and known as being a part of Original Tract 13."

Emigh asserts in his first assignment of error that the trial court erred in finding that Coventry is the fee simple owner of the property in question. We do not agree.

■ The starting point for our review is the Canal Act. As already indicated, pursuant to Section Eight of the Act, the state could appropriate any land necessary for a canal, making the state the fee simple owner of the land. The former owner of the land retained no interest in it. *State v. Griftner* (1899), 61 Ohio St. 201, 211, 55 N.E. 612, 613. The title to the appropriated land remains with the state even after the state ceases using the land for canal purposes. *Id.* at paragraph two of the syllabus.

■ In order for the state to acquire title to the property, the state's entry, use, and possession had to be open and notorious so as to inform the property owner that his land had been taken. *Miller v. Wisenberger* (1900), 61 Ohio St. 561, 584, 56 N.E. 454, 456. Mere incidental entry on the property, entry not of a character to alert the land owner that his land was appropriated, does not vest the state with fee simple ownership. *Id.* at paragraph one of the syllabus. When reviewing a claim that the state is the owner of property based on Section Eight, we must remain mindful that:

"This section [Section Eight] of the statute should be fairly construed, not rigidly in favor of either party. It should be regarded by the courts at this late day as it was looked upon in the days when the canals were constructed, and to wrest the lands from the owners and vest a fee thereto in the state, facts should appear from which a court can clearly see that both parties knew or should have known at the time of the construction of the canals, that the lands in question in any particular case had been appropriated and used for canal purposes." *Id.* at 585, 56 N.E. at 457.

■ In order to determine whether the trial court correctly found that Coventry was the fee simple owner of the property, we must first determine whether the disputed property was appropriated by the state for canal purposes. *State v. Cincinnati Tin & Japan Co.* (1902), 66 Ohio St. 182, 64 N.E. 68, paragraph five of the syllabus; *State ex rel. Bettman v. Miami Conservancy Dist.* (1933), 127 Ohio St. 296, 188 N.E. 353; *Limbert v. Gross* (Mar. 29, 1989), Shelby App. No. 17–87–24, 1989 WL 29223. Because Emigh failed to introduce any evidence that this property was appropriated by the state, the trial court properly granted judgment in appellees' favor.

In *Limbert, supra,* the court was faced with a similar situation where two parties claimed ownership of the same parcel of land. Appellant claimed by a Governor's Deed while appellees claimed through a series of recorded deeds. *Id.* at 2. Appellant asserted that the Gaffney survey, commissioned by the state in 1894, supported his claim to the disputed land. *Id.* at 4. The court did not accept this argument because the Gaffney survey was conducted many years after the canal was no longer in use. *Id.* at 7. The court held, therefore, that appellant failed to establish that the disputed property was

appropriated by the state. *Id.* at 8. Given that, the court held that appellees had title to the disputed property. *Id.* at 9.

In the case at bar, Emigh failed to establish that the disputed land was ever appropriated by the state as canal land.[1] Therefore, appellants did not establish that the state ever owned the disputed property. Thus, Emigh cannot claim ownership of this property through the state.

The first assignment of error is overruled.

### Assignment of Error No. II

"The trial court erred in granting a permanent injunction against Defendant–Appellants."

App.R. 12(A) provides as follows:

"(A) Determination. In every appeal from a trial court of record to a court of appeals, not dismissed, the court of appeals shall review and affirm, modify, or reverse the judgment or final order of the trial court from which the appeal is taken. The appeal shall be determined on its merits on the assignments of error set forth in the briefs required by Rule 16, on the record on appeal as provided by Rule 9, and, unless waived, on the oral arguments of the parties, or their counsel, as provided by Rule 21. Errors not specifically pointed out in the record and separately argued by brief may be disregarded. All errors assigned and briefed shall be passed upon by the court in writing, stating the reasons for the court's decision as to each such error."

Where an assignment of error is not separately argued by brief, it may be disregarded. App.R. 12(A); *N. Coast Cookies, Inc. v. Sweet Temptations, Inc.* (1984), 16 Ohio App.3d 342, 343, 16 OBR 391, 392, 476 N.E.2d 388, 390; *Gotto v. Gotto* (Nov. 27, 1991), Summit App. No. 15073, unreported, at 4, 1991 WL 260202. Appellants set forth this assignment of error in the introductory portion of their brief, but failed to present any argument under this assignment of error. Therefore, the second assignment of error is overruled.

### Assignments of Error Nos. III and IV

"III. The trial court erred in failing to sustain the defendant [*sic*] of equitable estoppel.

---

1. The weight of the evidence introduced in this case on the question of state appropriation and ownership was less than the evidence introduced in *Limbert v. Gross, supra.*

"IV. The trial court abused its description [*sic*] in failing to find lached [*sic*] defense upon the uncontrodicted [*sic*] evidence presented on behalf of the defendants."

Appellants assert in their third and fourth assignments of error that the trial court erred by failing to apply the defense of equitable estoppel and laches. We will address these assignments of error together.

Appellants base their claims of equitable estoppel and laches on the actions of the former zoning inspector. According to Emigh's testimony, the inspector told him that the property in question was owned by the state.

Principles of estoppel do not apply against the state, its agencies, or its agents. *Griffith v. J.C. Penney Co.* (1986), 24 Ohio St.3d 112, 113, 24 OBR 304, 304, 493 N.E.2d 959, 960; *Bridle v. Hudson Twp.* (Jan. 25, 1989), Summit App. No. 13731, unreported, 1989 WL 7445; *Richfield v. Nagy* (Mar. 5, 1986), Summit App. No. 12300, unreported, 1986 WL 2914. Mistaken advice or opinions of a government agent do not create an estoppel. *Chevalier v. Brown* (1985), 17 Ohio St.3d 61, 63, 17 OBR 64, 66, 477 N.E.2d 623, 625, citing *State ex rel. Svete v. Bd. of Elections* (1965), 4 Ohio St.2d 16, 18, 33 O.O.2d 139, 140, 212 N.E.2d 420, 421. Appellants assumed the risk that the former zoning inspector was wrong. *Griffith, supra; Bridle, supra,* at 10; *Nagy, supra,* at 3.

Likewise, laches generally does not apply against the government. *Lee v. Sturges* (1889), 46 Ohio St. 153, 176, 19 N.E. 560, 571; *Haba v. Cuff* (App.1963), 28 O.O.2d 266, 269, 201 N.E.2d 343, 346; *State ex rel. Chester Twp. Bd. of Trustees v. Makowski* (1984), 12 Ohio St.3d 94, 96, 12 OBR 82, 84, 465 N.E.2d 453, 455; *Nagy, supra,* at 2. Because laches does not act to bar a claim made by a governmental unit, appellants cannot successfully assert laches as a defense. *Nagy, supra.* The third and fourth assignments of error are overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and COOK, J., concur.