The Ohio Turnpike Commission appeals from the decision of the Lorain County Court of Common Pleas, which denied the Commission's petition for injunctive relief. This court reverses.
 I.
On August 25, 1998, appellee T.T.R. ("TTR"), a limited liability company, applied to the Ohio Department of Transportation ("ODOT") for a permit to erect three billboards on property adjacent to the Ohio Turnpike in Lorain County. The property was owned by appellee Pikewood Manor, Inc. ("Pikewood"), which was leasing a portion of the property to TTR for the purpose of erecting and maintaining the billboards. On October 23, 1998, ODOT issued permits for TTR to erect the billboards with advertising permitted on one side. In March 1999, TTR filed an application for the billboards to have advertising on both sides. In May 1999, ODOT granted the permit and TTR completed the construction by May 12, 1999. TTR expended over $200,000 for the construction and the lease.
However, when the Ohio Turnpike Commission ("OTC") learned that the permit had been issued, OTC contacted ODOT to inform the latter agency that there were recorded restrictions against placing billboards on this property, pursuant to a deed issued to OTC in 1953. The deed allegedly contained restrictive covenants against placing billboards on the land now owned by Pikewood. ODOT ordered Pikewood and TTR to cease construction and remove the billboards from the property. TTR refused to do so, and on June 28, 1999, OTC filed a complaint for injunctive relief in the common pleas court.
The trial court held a hearing on the matter. OTC presented as evidence deeds in the chain of title to the disputed property. OTC also presented testimony by a title search expert who stated that the restrictions included in the 1953 deed were in Pikewood's chain of title. This witness also testified that it is common for properties along interstate highways to have such restrictions included in their chain of title. TTR's owner Tom Cregan testified that he has placed numerous billboards along interstate highways, and that he never does a title search.
The court determined that "none of the conveyances in the direct chain of title from [the original owner] to Pikewood Manor Inc. contain[s] this covenant." The court also found that Pikewood did not have actual notice of the restrictions. Therefore, the court concluded that OTC could not enforce the restrictions against Pikewood and TTR. The court further found that because OTC had not paid for the restrictions, OTC could not legally enforce them. Finally, the court found that the State of Ohio, through OTC and ODOT, had failed to assert the state's right to enforce the restrictions from the time TTR filed for the permit through the time TTR erected the billboard, a period of approximately eight months. Consequently, the judge found that OTC was estopped from enforcing the deed restrictions.
OTC filed the instant appeal, assigning three errors.
 II.
Assignment of Error No. 1
 The trial court erred in determining that the restrictive covenant prohibiting billboards on property adjacent to the Ohio Turnpike is not enforceable against the Defendants-Appellees.
Assignment of Error No. 2
 The trial court erred in finding that the case of [Ohio Turnpike Comm. v. Goodnight Inn, Inc. (1990), 69 Ohio App.3d 361] does not apply to the facts of this case.
The first two assignments of error address two of the factual conclusions upon which the trial court based its decision, namely that the restrictive covenants were not contained in Pikewood's chain of title, and that OTC had not paid for the restrictive covenants.
The trial court's determination of facts is reviewed under a manifest weight standard. "When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context." Frederick v. Born
(Aug. 21, 1996), Lorain App. No. 95CA006286, unreported, at 14. In determining whether a judgment is against the manifest weight of the evidence:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [judgment].
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175; see, also State v. Otten (1986),33 Ohio App.3d 339, 340. Accordingly, before an appellate court will reverse a judgment as against the manifest weight of the evidence in a civil context, the court must determine that the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.
In the instant case, TTR presented unrebutted testimony that it did not have actual knowledge of the restrictions which OTC seeks to enforce. However, where a grant of real property is made, the grantee will be bound by restrictions of record referenced in deeds in the grantee's chain of title. Thus, if the restrictive covenant was contained in recorded deeds in Pikewood's chain of title, then Pikewood and TTR will be held to have constructive notice of the restrictions, and will be bound by them.
In order to determine whether the restrictive covenant is in Pikewood's chain of title, we must identify what document is the "root of title" for the Pikewood property. "`Root of title' means that conveyance or other title transaction in the chain of title of a person, purporting to create the interest claimed by such person, upon which he relies as a basis for the marketability of his title." R.C. 5301.47(E). See, also, Toth v.Berks Title Ins. Co. (1983), 6 Ohio St.3d 338.
OTC presented evidence of the following recorded deeds, arguably in the Pikewood chain of title. On March 23, 1953, Louise Couture sold to OTC her property that was a portion of "Original Elyria Township Lots Nos. 33 and 34, West of Black River." The deed of the conveyance included a legal description of the portion of Lots 33 and 34 conveyed to OTC and it included the following restriction:
 Grantors, for their heirs, administrators, executors, and assigns do hereby covenant with the State of Ohio and the Ohio Turnpike Commission and their successors and assigns that Grantors, * * * and [their] assigns shall not establish or maintain or permit any natural or legal person to establish or maintain on any of the aforesaid remaining lands [of Lots 33 and 34] any billboard, sign * * * or other display which is visible from the travel of the Ohio Turnpike Project No. 1, and which is not at the date hereof in existence. This covenant shall run with the land.
This deed was recorded at Volume 575, Page 343 of the Lorain County Records. The parcel contained approximately 12.20 acres. OTC paid Louise Couture $13,052.00.
On July 29, 1954, Louise Couture deeded the remainder of the land she owned in Lots 33 and 34 to Associates Builders Supply Equipment ("ABS"). For purposes of the restrictive covenant issue here, this deed is the root of title to Pikewood. The deed included a legal description of Louise Couture's portion of Lots 33 and 34 being conveyed, and noted that the description excepted "therefrom about 12.20 Acres conveyed to The Ohio Turnpike Commission by deed filed in Volume 575, page 343 of Lorain County Record of Deeds." The deed to ABS further stated that the conveyance was subject to an easement to Ohio Fuel and Gas Co., with a volume and page reference, and that the conveyance was subject to an easement to the city of Elyria for a water line. The deed further stated that "[t]he above conveyance is made subject to the following easements and conveyances, if any: to the Ohio Turnpike Commission, The State of Ohio for highway purposes, City of Elyria, The Ohio Fuel Gas Company and the Ohio Edison Company." The deed was recorded at Volume 605, Page 385 of the Lorain County Records.
On September 7, 1960, ABS conveyed the Couture property to Pikewood, along with portions of Lots 36 and 37. This deed described the Couture property, including the notation that the portions of Lots 33 and 34 conveyed excepted "about 12.20 Acres conveyed to the Ohio Turnpike Commission by deed filed in Volume 575, Page 343 of Lorain County Record of Deeds." The deed further stated that ABS was "well seized of the above described premises [which] are free and clear from all incumbrances whatsoever except * * * restrictions, reservations, easements, limitations and conditions of record, if any." This deed was recorded at Volume 780, Page 487 of the Lorain County Records.
It is undisputed that TTR did not have actual notice of the restrictions. However, it is clear that both the Couture/ABS deed and the ABS/Pikewood deed note that there may be restrictions of record. The Couture/ABS deed says that the conveyance is subject to "any" conveyances to OTC, one of which, containing the subject restrictions, is listed by volume and page. The ABS/Pikewood deed mentions that part of the original property was deeded out to OTC at the very same volume and page noted above, and then states that the instant conveyance was subject to "restrictions * * * of record." Pikewood was obliged to examine the deed from Couture to ABS, to determine what property interest ABS had to convey to Pikewood. If Pikewood had examined the deed granting the subject property to ABS, Pikewood would have discovered the restrictive covenant against billboards.
This court concludes that the trial court's determination that there was no restriction of record in the Pikewood chain of title was against the manifest weight of the evidence.
The trial court also concluded that OTC did not pay consideration to Couture for the restrictive covenant in addition to the amount paid for the 12.20 acres conveyed to OTC. However, there was no evidence whatsoever upon which to base such a conclusion. OTC concedes that if OTC obtained the restrictive covenants without paying for them, OTC is clearly prohibited by law from actually enforcing such restrictions. However, there was no evidence as to the market value of the land alone in 1953, which would lead the trial court to reasonably conclude that none of the purchase price was directed to compensate Couture for the restrictive covenant. Absent evidence to the contrary, it is reasonable to conclude that OTC paid Couture for what OTC received, 12.20 acres of land plus the restrictive covenant. Because no evidence was presented to support the opposite conclusion, OTC is entitled to enforce the restrictive covenant. See Ohio Turnpike Comm. v. Goodnight Inn, Inc.
(1990), 69 Ohio App.3d 361, 365.
We conclude that the trial court's determination was against the manifest weight of the evidence. We find that the weight of the evidence was that OTC paid consideration for the restrictive covenant that was in the recorded chain of title for Pikewood. OTC's first and second assignments of error are sustained.
 III.
Assignment of Error No. 3:
 The trial court erred in finding that the issuance of a billboard permit to T.T.R. Media, L.L.C. (T.T.R. Media) by the Ohio Department of Transportation (ODOT) estops the Ohio Turnpike Commission (OTC) from enforcing a deed restriction of record which prohibits the erection of billboards on property adjacent to the Ohio Turnpike leased by T.T.R. Media for billboard purposes.
For its third basis in ruling against OTC, the trial court determined that OTC was estopped from asserting any valid restrictions it may have based on the Couture/OTC deed, because another state agency, ODOT, had already granted TTR a permit to construct the billboards. OTC argues that a government agency cannot be estopped by the act of another government agency. This court agrees.
Principles of estoppel do not apply against the state when a state agency acts in its governmental capacity. See Halluer v. Emigh (1992),81 Ohio App.3d 312, 318, citing Griffith v. J.C. Penney Co. (1986),24 Ohio St.3d 112, 113. Nor will the doctrine of laches apply against a governmental agency. Halluer, 81 Ohio App.3d 318, citing State ex rel.Chester Twp. Bd. of Trustees v. Makowski (1984), 12 Ohio St.3d 94, 96.
Furthermore, TTR's application for the billboard permit contained the sworn statement of Pikewood's owner Todd Sommer acknowledging TTR's "right to occupy the land at the sign location." Given the restrictions in the chain of title and Pikewood's constructive notice of the restrictions, TTR may have had the right to occupy the land at the sign location, but not for the purposes for which TTR was seeking the billboard permit. The fact that ODOT granted the permit in reliance on TTR's inaccurate representation should not bind ODOT from taking action against TTR by revoking the permit in order to enforce OTC's restrictive covenant. Finally, when OTC learned of the construction of the billboard on May 12, 1999, OTC notified ODOT of the problem and asked for construction to cease.
OTC's third assignment of error is sustained. The judgment of the trial court is reversed, and the cause is remanded for further action consistent with this opinion.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellees.
Exceptions.
 ___________________________ WILLIAM R. BAIRD