This is an appeal by plaintiff, Anita L. Marbury, from a judgment of the Ohio Court of Claims rendered in favor of defendant, Central State University, on plaintiff's claim for breach of employment contract.
On July 6, 1998, plaintiff filed a complaint against defendant, Central State University, asserting claims for handicap, race and sex discrimination, negligent and intentional infliction of emotional distress and wrongful discharge. Defendant filed an answer on August 5, 1998.
The issues were bifurcated and the case came for trial before the court on the sole issue of liability. During plaintiff's opening statement, counsel informed the court that plaintiff no longer wished to pursue her claims for handicap discrimination and for intentional infliction of emotional distress. At the close of plaintiff's case, the trial court sustained defendant's Civ.R. 41(B)(2) motion to dismiss plaintiff's claims for race and sex discrimination, leaving the breach of contract claim as the sole issue for determination.
The trial court made the following findings based upon the evidence presented at trial. Defendant is a state institution of higher education, created pursuant to R.C. Chapter 3343, and plaintiff was employed by defendant from 1986 until her last day of employment on March 10, 1997. Plaintiff worked under written employment contracts during most of her years of employment with defendant. On October 15, 1993, plaintiff signed her last formal employment contract, under which she was appointed as registrar for the period beginning October 1, 1993, and ending June 30, 1994.
In early 1995, defendant's president, Arthur E. Thomas, met with university employees and announced that staff members would not receive a salary increase for the 1995 fiscal year, and that employees would receive a written communication regarding the salary freeze. On March 16, 1995, plaintiff acknowledged, in writing, a letter from President Thomas, dated March 6, 1995, informing plaintiff that her salary would remain the same for the period from July 1, 1994 to June 30, 1995.
On March 10, 1997, plaintiff's supervisor, Constance Rockingham, informed plaintiff that she had the choice of either resigning from her position or of being terminated. Rockingham was a member of the university's management team that the board of trustees had put in place to oversee the university as a result of an impending financial crisis. Rockingham informed plaintiff that the management team had made a decision to terminate her employment. The trial court made a finding that, "after some hesitation," plaintiff signed a resignation letter that had been prepared by Rockingham. The March 10, 1997 letter stated that the resignation was effective immediately, and that plaintiff would be paid her current salary and benefits for a period of thirty days from the date of her resignation.
In addressing plaintiff's contention that she was forced to sign a letter of resignation, the trial court found in its decision that "plaintiff's resignation was voluntary in that plaintiff ultimately made the decision to sign the resignation letter rather than be subjected to the alternative of being terminated." The trial court further found that, even assuming plaintiff had not signed the letter voluntarily, plaintiff was working as an at-will employee at the time of her resignation in 1997. Specifically, the court found that plaintiff's last formal employment contract with defendant was executed on October 19, 1993, and that such contract expired by its terms on June 30, 1994. The court held that the March 6, 1995 letter from President Thomas explicitly extended the provisions of the prior contract only until June 30, 1995.
The trial court also determined that "no further extension of Plaintiff's employment contract arose from President Thomas' 1995 statement to employees." The court held that when plaintiff signed the March 6, 1995 letter, it became a contract that defined the terms and conditions of plaintiff's employment. The court further concluded that the contract was free of ambiguity, and thus the parol evidence rule precluded any attempt by plaintiff to introduce evidence of an oral agreement that varied the terms of the express written agreement. Thus, the court held that plaintiff had failed to prove by a preponderance of the evidence that defendant breached plaintiff's employment contract.
On appeal, plaintiff sets forth the following two assignments of error for review:
First Assignment of Error:
 THE COURT OF CLAIMS COMMITTED PREJUDICIAL ERROR WHEN IT FOUND THAT PLAINTIFF-APPELLANT WAS AN AT WILL EMPLOYEE SUBJECT TO TERMINATION AT ANY TIME.
Second Assignment of Error:
 THE COURT OF CLAIMS COMMITTED PREJUDICIAL ERROR WHEN IT FOUND THAT PLAINTIFF-APPELLANT VOLUNTARILY RESIGNED HER POSITION AS REGISTRAR OF CENTRAL STATE UNIVERSITY.
Under her first assignment of error, plaintiff's primary contention is that Dr. Arthur Thomas, the President of Central State, held a meeting in February 1995 during which he advised the staff that their contracts would be extended for a three year period with no raises for at least two of the three years. Plaintiff further argues that, on March 6, 1995, Dr. Thomas wrote a letter to all staff members, including plaintiff, memorializing his statements regarding the February meeting. Plaintiff asserts that this written document confirms a meeting of the minds between the parties with respect to an offer of three years. Plaintiff maintains that she accepted this offer and that the university partially performed by paying her in accordance with the contract terms until March 1997. Plaintiff contends that the doctrine of promissory estoppel precludes defendant's actions in terminating her from her position.
As noted by the trial court, the facts indicate that the last "formal" contract signed by plaintiff was dated October 19, 1993. The terms of the contract provided in part that "the University agrees to employ and the Appointee does hereby accept and agree to render full-time service as Registrar for the period beginning October 1, 1993 and ending June 30, 1994 * * *." The contract further provided that, "the Appointee shall have the right to terminate this agreement by submitting a written resignation to the President not less than thirty (30) days prior to its effective date." Finally, the contract provided that "the University may terminate this agreement at anytime for cause," and that "the University may terminate this agreement prior to the expiration hereof on thirty (30) days written notice to Appointee."
Also introduced at trial was a letter from the President of the university, dated March 6, 1995, indicating that there would not be a salary increase "for FY95." The letter further provided that, "[y]our salary of $57,318, will remain the same for the period July 1, 1994 June 30, 1995," and that "[t]he current contract terms and conditions will continue." The trial court found that the March 6 letter "explicitly extended the provisions of the prior contract only until June 30, 1995," and we note the record does not indicate that plaintiff signed any other type of written agreement subsequent to signing the letter.
As indicated under the facts, the trial court concluded that the March 6 letter, signed by plaintiff, extended the provisions of the prior contract only until June 30, 1995. The court further found that the contract was free of ambiguity, and thus the parol evidence rule precluded any attempt by plaintiff to introduce evidence of an oral agreement that varied the terms of the written agreement.
Defendant argues that plaintiff's promissory estoppel claim must fail in part because defendant's president did not have the statutory authority to make a promise to plaintiff of a three-year, non-terminable contract. Upon review of the applicable law, we agree.
The trial court noted under the facts that defendant is a state institution of higher education created pursuant to R.C. Chapter 3343. R.C. 3343.06 states in relevant part that "[t]he board of trustees of Central state university shall elect, fix the compensation of, and have the right to remove the president * * * and elect, fix the compensation of, and remove such number of professors, teachers, and other employees as is necessary."
In Drake v. Med. College of Ohio (1997), 120 Ohio App.3d 493, 495, this court held that "promissory estoppel will not apply when a position taken by an agency is contrary to express statutory law." In Drake, the appellant asserted claims for breach of contract and promissory estoppel against a medical college at a state institution following her termination. Appellant alleged that the president and senior vice president made representations to her regarding her employment. At issue in Drake were the provisions of R.C. 3350.03, which sets forth language similar to R.C. 3343.06.
In Drake, supra, at 495-496, this court held:
 Appellant could not rely upon the representations of either the President or Senior Vice President of MCO because they did not have the authority to hire an employee. R.C. 3350.03 provides:
 "The board of trustees of the medical college of Ohio at Toledo shall employ, fix the compensation of, and remove the president and such numbers of professors, teachers, and other employees as may be deemed necessary. The board shall do all things necessary for the creation, proper maintenance, and successful and continuous operation of the college. * * *"
 Thus, the sole authority to approve employment contracts for MCO was given to the board of trustees by the General Assembly. Any representations made by the president or senior vice president would be contrary to express statutory law and, thus, promissory estoppel does not apply. Further, public officers cannot bind the state by acts outside their express authority. Kirk Williams Co. v. Ohio State Univ. Bd. Of Trustees (June 13, 1989), Franklin App. No. 88AP-697, unreported * * *. Mistaken advice or opinions of a governmental agent do not give rise to a claim based on promissory estoppel. Halluer v. Emigh (1992), 81 Ohio App.3d 312 * * *.
Similarly, in the instant case, plaintiff's promissory estoppel claim fails as a matter of law. We note that the trial court made a finding that there was no support for plaintiff's claim that defendant's president promised to grant all staff members a three-year employment contract. However, even if defendant's president made such an offer, plaintiff could not have reasonably relied upon that representation.Drake, supra.
Further, even assuming defendant's president had the authority to offer a three-year commitment of employment, we find no error with the trial court's application of the parol evidence rule to the facts of this case. In general, "`[t]he parol evidence rule is a rule of substantive law that prohibits a party who has entered into a written contract from contradicting the terms of the contract with evidence of alleged or actual agreements.'" Ed Schory Sons, Inc. v. Soc. Nat'l. Bank (1996),75 Ohio St.3d 433, 440, quoting 3 Corbin, Corbin on Contracts (1960) 357, Section 573. Thus, "`an oral agreement cannot be enforced in preference to a signed writing which pertains to exactly the same subject matter, yet has different terms.'" Id. Further, "[p]romissory estoppel does not apply to oral statements made prior to the written contract, where the contract covers the same subject matter." Borowski v. StateChem. Mfg. Co. (1994), 97 Ohio App.3d 635, 643. See, also, Gallant v.Toledo Pub. Schools (1992), 84 Ohio App.3d 378, 386 (promissory estoppel does not apply where plaintiff was employed under a limited one-year contract).
In the present case, we agree with the trial court's finding that the March 6 letter unambiguously provided that plaintiff's salary would remain the same for the period of July 1, 1994 through June 30, 1995, and that plaintiff's attempt to introduce an earlier oral promise of a three-year agreement was at variance with the terms of the later written agreement. Under the facts of this case, plaintiff cannot, by means of introducing parol evidence, invoke the doctrine of promissory estoppel to alter the unambiguous terms of an agreement.
Upon review, the record supports the trial court's finding that plaintiff's written contract expired after June 30, 1995, and was not extended by President Thomas' remarks at the 1995 staff meeting. Thus, we agree with the trial court's determination that the plaintiff failed to prove, by a preponderance of the evidence, a claim for breach of employment contract.
Accordingly, plaintiff's first assignment of error is without merit and is overruled.
In light of our disposition of the first assignment of error, the issue raised in plaintiff's second assignment of error, asserting that the court erred in failing to find that plaintiff was constructively discharged, which is premised on the existence of an enforceable three-year contract, is rendered moot.
Based upon the foregoing, plaintiff's first assignment of error is overruled, plaintiff's second assignment of error is rendered moot, and the judgment of the trial court is hereby affirmed.
 _______________ DESHLER, J.
BOWMAN, P.J., and LAZARUS, J., concur.