OPINION
{¶ 1} Plaintiff-appellant, Robert Jacobson, appeals from the August 10, 2004 Court of Claims of Ohio judgment entry rendering judgment in favor of defendant-appellee, Medical College of Ohio ("medical college"), on appellant's claims of breach of contract and promissory estoppel. For the reasons that follow, we affirm the decision of the trial court.
 {¶ 2} On February 10, 2003, appellant filed a complaint against appellee asserting claims for breach of contract and promissory estoppel. Appellee filed an answer on March 6, 2003.
 {¶ 3} The issues of liability and damages were bifurcated and the case proceeded to trial on the sole issue of liability. Based on the evidence presented, the trial court made the following findings. Appellee is a state institution of higher education created pursuant to R.C. Chapter 3350. Appellant was employed in 1993 to 1998 as an assistant professor of obstetrics and gynecology ("OB/GYN") on a non-tenure track pursuant to a series of one-year contracts. Appellant was a member of Associated Physicians of Medical College Hospitals ("APMCO") a private non-state organization that billed for the clinical services that appellant provided. APMCO set appellant's salary and benefits as a physician for appellee. Dr. Louis Weinstein was appellant's supervisor at the medical college and APMCO.
 {¶ 4} In January 1997, appellant became the Director of Maternal/Fetal Medicine at St. Vincent Hospital ("St. Vincent"). Appellant was eligible for a $15,000 bonus for a one-year appointment. After his six-month evaluation, St. Vincent released appellant as the director. Appellant continued to work at St. Vincent, but not as the director.
 {¶ 5} On May 21, 1997, appellant entered into a one-year employment contract with appellee for the period beginning July 1, 1997, and ending June 30, 1998. On June 18, 1997, Dr. Weinstein sent appellant a notice of non-renewal letter stating that appellant's employment contract for the year starting July 1, 1998 would not be renewed. At that time, appellant advised Dr. Weinstein that he wanted to use his accrued vacation time and sick time for "terminal leave" and he wanted to be certain that he had five years of service credit in order to vest with the State Teachers' Retirement System ("STRS"). Appellant claimed that Dr. Weinstein agreed to allow appellant to use his vacation and sick time as terminal leave and also promised appellant that he would be paid half of the $15,000 bonus for the directorship position.
 {¶ 6} On May 8, 1998, the OB/GYN clinical faculty members, including appellant, received a memo from Dr. Weinstein stating that each member would receive a $5,000 bonus plus a $750 contribution to their retirement accounts as a token of appreciation for their support ("$5,750 bonus and retirement contribution").
 {¶ 7} On June 1, 1998, Carolyn Pinkston, Personnel Department Administrator, sent appellant a letter informing appellant that his request to use his accrued leave as terminal leave was approved by Dr. Weinstein. However, appellant's request to use his accumulated sick time for elective surgery preceding his vacation time was not granted due to staffing shortages.
 {¶ 8} On June 18, 1998, Dr. Weinstein delivered a letter to appellant informing appellant that his employment with appellee would be terminated effective July 1, 1998. The letter informed appellant that he would be fully vested with STRS effective June 30, 1998. Additionally, Dr. Weinstein rescinded the $5,750 bonus and retirement contribution offered to appellant.
 {¶ 9} On June 26, 1998, Bryan Pyles, Director of Faculty Affairs, sent appellant a letter informing appellant that his last day of employment with appellee would be June 30, 1998, that appellant would receive terminal vacation compensation for all of his accrued and unused vacation time, and that appellant's health insurance benefits would continue through July 31, 1998. Pyles testified that the $5,750 bonus and retirement contribution that appellant was to receive was APMCO's responsibility and not that of appellee.
 {¶ 10} Dr. Amira Gohara, Dean for the school of medicine, Vice President for Academic Affairs, and Executive Vice President and Provost also served as a board member of the board of trustees and member of the executive committee. Dr. Gohara approved Dr. Weinstein's recommendation not to renew appellant's contract. Dr. Gohara wrote a memo to the payroll manager indicating that appellant should be compensated for terminal vacation time according to the number of hours he accrued, not to exceed 240 hours. Dr. Gohara testified that the $15,000 directorship bonus and $5,750 bonus and retirement contribution would come from AMPCO's funds.
 {¶ 11} In addressing appellant's breach of contract claim, the trial court in examining appellant's employment contract, noted that the contract between appellant and appellee was unambiguous. Appellant received the notice of non-renewal by termination on June 18, 1997. The trial court determined that appellant failed to prove appellee breached the employment contract with appellant.
 {¶ 12} The trial court, in addressing appellant's promissory estoppel claim, also determined that appellant failed to prove appellee made a promise to appellant which appellant reasonably relied upon. Appellant argues that the June 1, 1998 letter received from Pinkston, Personnel Department Administrator, was a promise which he relied upon. The trial court noted, that pursuant to R.C. 3350.03, the Board of Trustees had the sole authority to approve employment contracts. In citing Marbury v.Central State Univ. (Dec. 14, 2000), Franklin App. No. 00AP-597, the trial court noted that any representations made by Dr. Weinstein or Pinkston would be contrary to R.C. 3350.03. Thus, the trial court held that appellant's promissory estoppel claim failed as a matter of law.
 {¶ 13} The trial court held that appellant failed to prove his breach of contract and promissory estoppel claims by a preponderance of the evidence. Appellant timely appealed, assigning the following as error:
I. The trial court erred in finding that appellee did not breach its contracts with appellant.
II. The trial court erred in finding that R.C. 3350.03 bars appellant from recovery.
 {¶ 14} In his first assignment of error, appellant argues that the trial court erred in finding that appellee did not breach the employment contract with appellant. Appellant argues that appellee failed to consult with and get the approval of the board of trustees prior to his removal.
 {¶ 15} In a civil case, judgment supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279. "It is also important that [in considering whether the trial court's judgment is against the manifest weight of the evidence] a court of appeals be guided by a presumption that the findings of the trier-of-fact were indeed correct." Seasons Coal Co. v. City of Cleveland (1984),10 Ohio St.3d 77, 79-80.
 {¶ 16} Appellant's employment contract contained the following language:
* * * The nature and type of your appointment is described in the Bylaws of the Trustees of the Medical College of Ohio. Your appointment is subject to the provisions of said Bylaws and other actions of the Board of Trustees currently in effect, or as they may be amended or adopted hereafter. * * *
 {¶ 17} Appellee's Bylaws, Rules and Regulations, gave the medical college the authority to terminate a regular non-tenured appointment:
b. Termination by Non-Renewal
(1) The recommendation to terminate a non-tenured appointment by non-renewal shall be made by the department Chair (if applicable) and the Dean, who shall submit the recommendation in writing to the Vice President for Academic Affairs. The department Chair (if applicable) and the Dean shall inform the faculty member in writing of the decision for non-renewal.
(2) The Vice President for Academic Affairs, with the concurrence of the President, shall make the recommendation to the Board.
(3) Notice requirements to faculty
* * *
(c) After three or more years of service, a minimum of twelve (12) months before expiration of the appointment. Such notice must be made before July 1.
 {¶ 18} Dr. Gohara testified that as Vice President for Academic Affairs, Dean of the medical school, member of the Board of Trustees and an executive member, she approved appellant's termination by non-renewal. (Tr. 112.) Dr. Gohara testified that after recommendations for non-renewal are submitted to the Vice President for Academic Affairs, in this case Dr. Gohara, the president submits those recommendations to the board of trustees for approval. (Tr. 122-123.)
 {¶ 19} Pyles, Director of Faculty Affairs, testified that it was common practice for the letter of termination by non-renewal to be signed by the department Chair, in this case, Dr. Weinstein. Appellant received notice of the non-renewal on June 18, 1997, prior to July 1.
 {¶ 20} As such, appellant has failed to demonstrate how appellee breached his employment contract. Relying on this uncontroverted testimony, the judgment reached by the trial court was supported by some competent, credible evidence going to all the essential elements of the case. Accordingly, appellant's first assignment of error is not well-taken.
 {¶ 21} In his second assignment of error, appellant argues that the trial court erred in finding that R.C. 3350.03 barred appellant's promissory estoppel claim. Specifically, appellant argues that there were separate and distinct agreements made by appellee, outside of the employment contract, to pay appellant's bonuses and accrued vacation and sick time to be used as "terminal time" at the end of this employment.
 {¶ 22} R.C. 3350.03 states:
The board of trustees of the medical college of Ohio at Toledo shall employ, fix the compensation of, and remove the president and such numbers of professors, teachers, and other employees as may be deemed necessary. The board shall do all things necessary for the creation, proper maintenance, and successful and continuous operation of the university. * * *
 {¶ 23} In Drake v. Medical College of Ohio (1997),120 Ohio App.3d 493, 495, this court held that "promissory estoppel will not apply when a position taken by an agency is contrary to express statutory law." In Drake, the appellant asserted claims of breach of contract and promissory estoppel against a medical college at a state institution following her termination. Appellant alleged that the president and the senior vice president made representations to her regarding her employment. At issue in Drake was the same statutory provision as in this case. In Drake, we held that appellant could not rely upon the representations of either the president or the senior vice president of the medical college because neither person had the authority to hire an employee. Id. Any representations made by the president or the senior vice president would be contrary to R.C. 3350.03, and thus, promissory estoppel does not apply.
 {¶ 24} Similarly, in this case, appellant's promissory estoppel claim fails as a matter of law. Appellant cannot rely upon the representations of either Dr. Weinstein or Pinkston. The General Assembly vested the sole authority to approve employment contracts for appellee to the board of trustees. Furthermore, uncontradicted evidence was presented to show that appellant's allegation that he was entitled to the $15,000 directorship bonus, the $5,750 bonus and retirement contribution, and extra compensation for paid holidays was APMCO's responsibility and not that of appellee's. (Tr. 114-116.) Therefore, promissory estoppel does not apply. Additionally, mistaken advice or opinions of a governmental agent do not give rise to a claim based on promissory estoppel. Halluer v. Emigh
(1992), 81 Ohio App.3d 312. Accordingly, we agree with the trial court's determination that appellant failed to prove, by a preponderance of the evidence, a claim for promissory estoppel. As such, appellant's second assignment of error lacks merit and is not well-taken.
 {¶ 25} For the foregoing reasons, appellant's first and second assignments of error are overruled and the judgment of the Court of Claims of Ohio is affirmed.
Judgment affirmed.
Brown, P.J., and French, J., concur.