[Cite as *Mezey v. Ohio Dev. Servs. Agency*, 2016-Ohio-7236.]

| | |
|---|---|
| GAIL MEZEY | Case No. 2015-00110 |
| Plaintiff | Magistrate Anderson M. Renick |
| v. | DECISION OF THE MAGISTRATE |
| OHIO DEVELOPMENT SERVICES AGENCY | |
| Defendant | |

**{¶1}** Plaintiff brings this action alleging promissory estoppel and wrongful termination in violation of public policy.[1]

**{¶2}** Plaintiff was employed by defendant Ohio Development Services Agency (DSA), formerly known as the Ohio Department of Development (ODD). Prior to her employment with defendant, plaintiff had worked in the film industry for many years, including work with the Columbus Film Commission, where she interacted with the Ohio Film Bureau, which was later known as the Ohio Film Office. In March 2011, plaintiff was appointed to a part-time, intermittent administrative staff position with defendant's Travel and Tourism Division at a pay rate of $20 per hour. (Plaintiff's Exhibit 3.) Plaintiff testified that her initial duties involved answering phone calls and email regarding the Ohio Motion Picture Tax Credit (OMPTC), a state program which issued tax credits to encourage media production and projects in Ohio. Plaintiff stated that when she began her employment with defendant, the Film Bureau office was understaffed because both the manager and coordinator had recently left the office following a change in administration. According to plaintiff, over time, her duties became more substantive.

---

[1]On August 26, 2015, the court issued an entry which dismissed plaintiff's claim for "violation of Ohio law."

{¶3} During her employment with defendant, plaintiff reported to nine different supervisors as the Film Office was reorganized among changing administrations and transferred to various divisions within ODD, including Travel and Tourism and the Small Business Investment divisions. Plaintiff testified that she accomplished many of the duties that were previously performed by full-time employees, eventually working up to 40 hours each week from approximately May to September 2011, to help respond to an audit of the tax credit program. According to plaintiff, Chris Magill, her supervisor at that time, was also busy and asked her to work on a full-time basis. Among other projects, plaintiff updated the OMPTC database that Magill had developed. About the time Magill left in July 2011, plaintiff became more involved with the OMPTC program. On September 7, 2011, plaintiff sent an email to Jerry Good, her supervisor at the time, to confirm that she had been directed not to exceed 32 hours per week. (Plaintiff's Exhibit 7.) Plaintiff testified that she had responsibility for reviewing tax credit applications, communicating with the applicants, and preparing the applications which she presented to the OMPTC committee for approval. Plaintiff was a voting member of the committee.

{¶4} Pat Barker was employed by DSA from October 2010 to October 2013 and initially served as the Assistant Director of Tourism before she was promoted to Interim Director of Tourism in June 2011. Barker testified that she was plaintiff's direct supervisor during two periods and she also worked with plaintiff when Barker served as a member of the OMPTC committee. Barker described plaintiff as a "very professional" employee who was busy with her job duties. According to Barker, plaintiff maintained defendant's website, answered numerous telephone inquiries and met often with film producers and directors, serving as a liaison for film-related resources in Ohio.

{¶5} Plaintiff testified that she frequently met with her supervisors to discuss her work. Plaintiff stated that she submitted periodic reports of her activities and projects to

Barker and her other supervisors. Both plaintiff and Barker testified that all DSA employees electronically submitted their work time to a supervisor for approval and that they were never informed of any concern by management regarding plaintiff's work hours.

{¶6} Plaintiff testified that she had discussions with her supervisors about her increased job duties and she questioned both her status as an intermittent employee and her salary. Plaintiff believed that her position should have been classified as a full-time, permanent position and that she should have received a higher salary with benefits, including paid vacations, health insurance, and retirement contributions. Plaintiff related that several of her supervisors and upper-level managers informed her that they were "working on" a permanent appointment for her and they urged her to "hang on." Plaintiff testified that during the discussions about her position, both David Zak, the chief of the Business Services Division and Darryl Hennessey, the assistant chief, asked her to draft a "white paper" which outlined a plan to increase the fee for a film tax credit application as a means to fund, among other things, a permanent, full-time position for plaintiff. On January 4, 2012, plaintiff sent her first draft of the plan to Zak. (Plaintiff's Exhibit 25.) On June 7, 2012, plaintiff forwarded to both Hennessy and the manager of tax incentives a draft of proposed changes to the Ohio Administrative Code to implement the application fee increase. (Plaintiff's Exhibit 27.)

{¶7} Plaintiff testified that on several occasions, she was asked to draft a position description for her job. On August 31, 2011, plaintiff was presented with the position description for the prior Film Office Coordinator, and she informed Jerry Good, her supervisor at the time, that her current duties were "a meld" of the previous positions of Film Office Coordinator and Film Office Director. (Plaintiff's Exhibit 20.) Barker testified that DSA Director David Goodman requested a position description for each employee and, in March 2013, Barker asked plaintiff to prepare her position description. On April 5, 2013, plaintiff provided Barker with a position description for the "Ohio Film

Office Manager." (Plaintiff's Exhibit 53.) In June 2013, Lynn Tolan, DSA's new Chief of Communications and Policy, directed the human resources department (HR) to conduct an audit of the positions under her direction, including plaintiff's position. (Plaintiff's Exhibit 22.) HR provided a job audit questionnaire for the "Ohio Film Office Coordinator/Manager" position, which plaintiff completed.

{¶8} In June 2013, plaintiff was still classified as an intermittent, part-time employee when she consulted with an attorney regarding her employment status. On June 11, 2013, plaintiff's attorney sent a demand letter to Director Goodman which specifically requested an immediate full-time appointment as the Ohio Film Office Manager, with "paid back pay and benefits." (Plaintiff's Exhibit 38.) Plaintiff testified that, after she did not receive a response to the letter, she contacted Goodman's office and Wendy Jordan, Goodman's secretary, informed her that the letter had been received. Plaintiff stated that she did not speak to anyone other than Jordan about the letter her attorney had sent to Goodman, however, plaintiff testified that she perceived "a bit of a chilly reception" from DSA leadership thereafter.

{¶9} On June 20, 2013, Tolan responded to plaintiff's email regarding her work hours, wherein Tolan reminded plaintiff that she was a part-time intermittent employee and that Tolan did not expect her to work 40 hours a week. (Plaintiff's Exhibit 39.) On July 3, 2013, Tolan directed plaintiff to "shoot for a target of 20 hours a week" which was consistent with working up to 1000 hours a year as an intermittent employee. (Plaintiff's Exhibit 42.) Plaintiff testified that she complied with Tolan's direction, but she related that it was difficult to perform her usual job duties as a part-time employee. On July 11, 2013, plaintiff's counsel sent a second letter to Director Goodman which reiterated the demand to appoint plaintiff to a full-time position with back pay and benefits. (Plaintiff's Exhibit 45.) The letter also characterized Tolan's instruction to work approximately 19 hours a week as apparent retaliation for the initial letter to Goodman.

{¶10} According to plaintiff, by August 2013, there was some uncertainty about the focus of the work of the Ohio Film Office. On August 19, 2013, plaintiff sent Tolan an email, acknowledging that she understood "changes [were] afoot" but that she was "unclear just what the parameters are" for the office. (Plaintiff's Exhibits 47 and 48.) In her email, plaintiff sought Tolan's direction on how she "would like this office to proceed" regarding a response to an inquiry from a film producer. Tolan directed plaintiff to provide information about film tax credits and to let her know if any assistance beyond tax credits was requested. On August 27, 2013, plaintiff attended a meeting with Tolan where she had intended to discuss her job duties and hours. When plaintiff arrived for the meeting, she was met by an HR representative and, soon thereafter, Tolan informed her that her position was being terminated. Plaintiff testified that Tolan did not provide a reason for the termination at that time.

**Wrongful Discharge in Violation of Public Policy**

{¶11} As a general rule, the common law doctrine of employment-at-will governs employment relationships in Ohio. *Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240, 2002-Ohio-3994. In an at-will employment relationship, either an employer or an employee may legally terminate the employment relationship at any time and for any reason. *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 103 (1985). The public policy exception to the employment-at-will doctrine "is not limited to public policy expressed by the General Assembly in the form of statutory enactments" but "may [also] be discerned by the Ohio judiciary based on sources such as the Constitutions of Ohio and the United States, legislation, administrative rules and regulations, and the common law." *Painter v. Graley*, 70 Ohio St.3d 377, 383-384 (1994). There is no question, that plaintiff's appointment could be terminated "at any time," that she served at the pleasure of the appointing authority, and that she was an at-will employee. (Plaintiff's Exhibit 3.)

{¶12} In order to establish a claim for wrongful termination in violation of public policy, plaintiff must prove: 1) a clear public policy manifested in a statute, regulation, or

the common law (the clarity element); 2) that discharging an employee under circumstances like those involved would jeopardize the policy (the jeopardy element); 3) that the discharge at issue was motivated by conduct related to the policy (the causation element); and 4) that there was no overriding business justification for the discharge (the overriding justification element). *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 151 (1997). The clarity and jeopardy elements are questions of law, while causation and overriding justification elements are questions of fact. *Collins v. Rizkana*, 73 Ohio St.3d 65, 70 (1995).

{¶13} The Tenth District Court of Appeals has held that "the act of firing an employee for consulting an attorney could serve as the basis for a public policy exception to the common-law employment-at-will doctrine." *Simonelli v. Anderson Concrete Co.*, 99 Ohio App.3d 254, 259, (10th Dist.1994). There is "no question that it is against the clear public policy of the state of Ohio for an employer to terminate an employee for retaining legal counsel." *Kulick v. Ethicon Endo-Surgery, Inc.*, 803 F.Supp.2d 781, 788-789 (S.D.Ohio 2011).

{¶14} Although plaintiff contends that the termination of her employment was motivated by her decision to retain legal counsel, plaintiff failed to prove that Director Goodman terminated her position because her attorney sent him a letter demanding an appointment to a full-time position. Furthermore, Tolan made the recommendation to terminate plaintiff's employment and Tolan's testimony that she was not aware that plaintiff had retained legal counsel was credible. The evidence shows that the job audit of the Film Office, which reviewed both Barker's and plaintiff's positions, began before the initial demand letter arrived at DSA. Plaintiff represents that the first letter to Goodman was sent by regular mail on June 11, 2013, the same date that HR department announced the audit of the departments which were under Tolan's direction. (Plaintiff's Exhibits 22 and 38.) The court finds that plaintiff failed to establish that Tolan

had any knowledge of either the letter or plaintiff's decision to retain an attorney to address her employment status when she recommended the termination of her position.

{¶15} Tolan explained that she recommended terminating the employment of both Barker and plaintiff based upon her assessment that they had different ideas for the Film Office and that they did not appear interested in "moving forward."  Tolan testified that she became concerned that Barker and plaintiff did not want to participate in Tolan's vision for the Film Office.  Specifically, Tolan testified that the proposal to raise application fees did not line up with the goals of the administration.  Tolan stated that plaintiff talked to her on multiple occasions about her proposal to raise application fees to provide funds for plaintiff's full-time salary and staff.  According to Tolan, plaintiff was spending more time on "kingdom building" than focusing on tax credit applications.  The court notes that Tolan's testimony regarding her emphasis on the tax credit program was consistent with the direction she provided to plaintiff in her August 19, 2013 email.  (Plaintiff's Exhibit 47.)   Tolan was also critical of the time and expense that was spent on plaintiff's traveling.  Tolan testified that she had no doubt that plaintiff was interested in creating a full-time job for herself by conducting the activities she was interested in rather than focusing on OMPTC administration.

{¶16} The evidence shows that plaintiff had extensive experience in the film industry and that she was a capable employee.  However, the court is convinced that Tolan believed that Barker and plaintiff did not share her vision for the Film Office and that they were at least somewhat resistant to Tolan's direction. Although plaintiff contends that Tolan's stated reasons for terminating her employment were a "sham," the court finds that Tolan's testimony regarding her decision to terminate plaintiff's employment was credible.

{¶17} The general rule is that the court may not substitute its judgment for that of the employer and may not second-guess the business judgments of employers regarding personnel decisions. *Wissler v. Ohio Dept. of Job & Family Servs.*, 10th Dist.

No. 09AP-569, 2010-Ohio-3432, ¶ 27. Based upon the testimony and evidence presented at trial, the court concludes that defendant had a legitimate overriding business justification for its decision to terminate plaintiff's employment. Accordingly, the court finds that plaintiff has failed to prove by a preponderance of the evidence her claim for wrongful termination in violation of public policy.

**Promissory Estoppel**

{¶18} Plaintiff alleges that she accepted the repeated assurances from multiple supervisors and managers within the Department that she would be formally placed in the position of Manager of the Ohio Film Office with commensurate salary and benefits and that she reasonably relied on these assurances, thereafter foregoing other opportunities for work. To establish a promissory estoppel claim under Ohio law, a plaintiff must show 1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance; and 3) injury resulting from that reliance. *Mers, supra; Rigby v. Fallsway Equip. Co., Inc.*, 150 Ohio App.3d 155, 2002-Ohio-6120, at ¶ 25 (9th Dist). Defendant argues that plaintiff could not reasonably rely on a promise made by a person who lacks the statutory authority to make that promise. The court agrees.

{¶19} R.C. 122.11, provides: "The director of development may employ and fix the compensation of technical and professional personnel, who shall be in the unclassified civil service, and may employ other personnel, who shall be in the classified civil service, as necessary to carry out [the statutory duties of the department]."

{¶20} The Tenth District Court of Appeals has held that "promissory estoppel will not apply when a position taken by an agency is contrary to express statutory law." *Drake v. Medical College of Ohio*, 120 Ohio App.3d 493, 495 (10th Dist.1997). Specifically, the court of appeals has found that a plaintiff could not rely on alleged representations regarding her employment by the president and vice president of a medical college because neither official had the authority to hire an employee. *Id.*; *Jacobson v. Med. Coll. of Ohio*, 10th Dist. Franklin No. 04AP-931, 2005-Ohio-2558, ¶

23. In *Jacobson*, the court noted that the General Assembly vested the sole authority to approve employment contracts for state university personnel to the board of trustees. *Id.* at ¶ 24.

{¶21} In this case, pursuant to R.C. 122.11, Director Goodman had the sole authority to hire or fire DSA's personnel who served in either classified or unclassified positions. "Additionally, mistaken advice or opinions of a governmental agent do not give rise to a claim based on promissory estoppel." *Id.*, citing *Halluer v. Emigh*, 81 Ohio App.3d 312 (9th Dist.1992). Furthermore, plaintiff admitted that Tolan did not promise to appoint her to a full-time position. As late as May 16, 2013, plaintiff was informed that Tolan had not approved the proposal to fill a full-time position for the Ohio Film Office Manager. (Plaintiff's Exhibit 34.) Accordingly, the court finds that plaintiff has failed to establish her claim of promissory estoppel.

{¶22} For the foregoing reasons, the court finds that plaintiff has failed to prove her claims by a preponderance of the evidence. Therefore, judgment is recommended in favor of defendant.

{¶23} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
ANDERSON M. RENICK
Magistrate

Case No. 2015-00110                    -10-                         DECISION


cc:

Julie C. Ford                          Lee Ann Rabe
111 West First Street, Suite 1100      Randall W. Knutti
Dayton, Ohio 45402-1156                Assistant Attorneys General
                                       150 East Gay Street, 18th Floor
                                       Columbus, Ohio 43215-3130

**Filed September 20, 2016**
**Sent To S.C. Reporter 10/6/16**